IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRUSTEES OF THE CARPENTERS' HEALTH
AND WELFARE TRUST FUND OF ST. LOUIS,

Plaintiffs,

Case No. 05-382-DRH

vs.

BRIAN BRUNKHORST and THOMAS C. RICH,

Defendants.


MEMORANDUM AND ORDER

HERNDON, District Judge:

I.  Introduction and Procedural Background

Pending before the Court is Plaintiffs' motion for summary judgment (Doc. 65).   Defendants oppose the motion.   Based on the pleadings and the applicable case law, the Court grants Plaintiffs' motion for summary judgment.

On June 6, 2005, Plaintiffs, Terry Nelson, John Mulligan, Patrick J. Sweeney, III, Renee Bell, Thomas Heinsz, John Fischer, Dave Caputa, Kenneth Stricker, James Schmid, Kirk Vereman, Al Bond and Angelo Lancia, as Trustees of the Carpenter's Health and Welfare Trust Fund of St. Louis ("the Plan") filed a three-count First Amended Complaint against Brian Brunkhorst and Thomas C. Rich (Doc. 44).  The First Amended Complaint alleges that "[t]his is an action by Plan fiduciaries to enjoin actions and practices of Defendants which violate the terms of the Plan, and

for other equitable relief to redress such violations and enforce the terms of the Plan." (Doc. 44, ¶ 3).   Count I is against Defendants Brunkhorst and Rich for temporary restraining order and injunction; Count II is against Brunkhorst for construction and declaration of rights under express trust (Settlement Trust); and Count III is against Brunkhorst for construction and declaration of rights under express trust (Plan Asset Trust).

Originally, the Plan filed a complaint and a motion for Temporary Restraining Order and Injunction on May 16, 2005 (Docs. 1 & 2).[1]  That same day, District Judge Catherine Perry held a hearing on Plaintiffs' motion for temporary restraining order, entered a Temporary Restraining Order against Defendants and set the matter for preliminary injunction hearing on May 27, 2005 (Doc. 5). Thereafter, Defendants entered their limited appearance (Doc. 16), filed a motion to dismiss (Doc. 19) and filed a motion to remand/transfer (Doc. 21).   On May 27, 2005, Judge Perry held a hearing, denied the motion to remand, extended the Temporary Restraining Order to June 7, 2005, and transferred the case to this Judicial District (Docs. 26 & 27).

On June 1, 2005, with consent of the parties, the Court extended the Temporary Restraining Order to June 13, 2005 (Doc. 34).   On June 6, 2005, Plaintiffs filed their First Amended Complaint (Doc. 44).   On June 13, 2005, the Court held a hearing on Plaintiffs' request for preliminary injunction and entered a

---

[1]This matter was originally filed in the District Court for the Eastern District of Missouri.

Preliminary Injunction (Docs. 48 & 49).  On September 26, 2005, the Court denied Defendants' motion to dismiss (Doc. 60).  Thereafter, Plaintiffs filed their motion for summary judgment (Doc. 66), Defendants filed their response (Doc. 69) and Plaintiffs filed their reply (Doc. 74).  The Court now turns to address the merits of the motion.

Plaintiffs argue that they are entitled to summary judgment as to Count I of the First Amended Complaint as state law must be excluded from consideration in determining Brunkhorst's claim to future benefits.  Further, Plaintiffs contend that they are entitled to summary judgment on Counts II and III of the First Amended Complaint in which they seek a declaration of their rights and obligations of Defendants and the Plan under two express trusts as Brunkhorst's obligation to reimburse the Plan for benefits paid remains unsatisfied.  Defendants object to summary judgment arguing, *inter alia*, that a permanent injunction and declaratory judgment would violate the state court's order regarding Defendant Rich's common fund doctrine claim, that the Plan document does not expressly require Brunkhorst to bear his own attorney's fees and that the action for construction and declaration of rights under express trusts and for specific performance is not "equitable" nor authorized by ERISA and that Brunkhorst, as a beneficiary to the Plan Asset Trust, was unaware of the existence of the trust and, therefore, could not have intended to create it.[2]  The Court agrees with Plaintiffs.

---

[2]Defendants also argue that the Anti-Injunction Act, **28 U.S.C. § 2283** prohibits the Court from entering a permanent injunction enjoining Defendants' state court action and that the Court does not have subject matter jurisdiction over Counts II and III.  Defendants previously have raised

## II.  Facts

The Plan is an employee benefit plan subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), **29 U.S.C. § 1001 *et seq*.** Plaintiffs are the Trustees of the Plan, having its principal administrative office within the City of Saint Louis, Missouri.  The assets of the Plan are held by the Trustees in trust, pursuant to a written trust agreement.  Defendant Brunkhorst is and at all relevant times was a member and participant of the Plan, eligible as such for Plan benefits.  On July 15, 2002, Brunkhorst received and signed an agreement with the "Carpenters' Health and Welfare Trust Fund of St. Louis."  The Plan document contains provisions requiring a participant to reimburse the Plan for benefits paid on account of an injury in the event the participant receives recovery from a third party on account of the same injury.  Defendant Rich is Brunkhorst's attorney in a tort suit titled ***Brunkhorst v. Landmark Tavern*, No. 02 L 38**, in the Circuit Court of Randolph County, Illinois.[3]  The Plan advanced a total of $39,845.68 in benefits on account of Brunkhorst's injuries.  Brunkhorst settled the tort suit for $21,000.00.

---

these arguments and the Court has rejected them.  Thus, the Court need not re-address these arguments.  See Docs. 49 & 60.

[3]The tort suit arises out of an altercation in which Brunkhorst received knife injuries from a third party on or about December 30, 2001.  For the first time in opposition to summary judgment (in the "facts" section), Brunkhorst asserts that the tort suit was also brought on behalf of Kaitlynn Brunkhorst, a minor, by her father, Brian Brunkhorst, for injury by an intoxicated person to her means of support and that Plaintiffs paid no benefits on her behalf (Doc. 69, p.1).  The Court does not see how this is relevant to the issue at hand and wonders why this was not raised prior to this point in litigation.  Further, the Court notes that the Randolph County Circuit Court's February 16, 2005 Order dividing the settlement did not take Kaitlynn's interest into account as she is neither mentioned in the caption of the Order nor in the text of the Order.

Defendant Rich filed a motion to adjudicate liens in the tort suit and mailed a copy of the motion to the Plan.  In response, the Plan's attorney, via letter dated February 9, 2005, informed Rich of the Plan's provisions requiring Brunkhorst to reimburse benefits paid without reduction for attorney's fees or other claims and of the Plan provisions for enforcement of Brunkhorst's reimbursement obligation by setting off future benefits.  The Plan, on advice of counsel, did not appear at the hearing of the motion to adjudicate liens.  On February 16, 2005, the Randolph County Circuit Court entered an order dividing the settlement: $9,151,31 to Rich for fees and expenses; $6,282.90 to the Plan; $200.00 to Chester Memorial Hospital; and  $5,365.79 to Brunkhorst.

On March 17, 2005, the Plan, through a letter to Brunkhorst, acknowledged the receipt of $6,282.90 towards his reimbursement obligation and informed him that the Trustees decided to set off his remaining indebtedness by withholding future benefits as provided in the Plan.  On April 29, 2005, Rich sent the Plan a letter informing it that he had filed a motion for temporary restraining order and permanent injunction in the tort suit seeking to prohibit the Plan from disrupting Brunkhorst's health, welfare and vacation benefits.  Thereafter, Plaintiffs filed this cause of action.

### III.  <u>Summary Judgment</u>

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56©; *Oats v. Discovery*

*Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law.  *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323).  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In response to a motion for summary judgment, the non-movant may not simply rest upon the allegations in his pleadings.  Rather, the non-moving party must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial.  *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324).  In reviewing a summary judgment motion, the court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial.  *Dykema v. Skoumal*, 261 F.3d 701, 704 (7th Cir. 2001)(citing *Anderson*, 477 U.S. at 249).  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996), cert. denied, 519 U.S.

1055 (1997); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994).

## IV.  <u>Analysis</u>

A claim asserted by a participant in an ERISA plan under color of state law, that is within the scope of **§ 502(a)** of ERISA, is completely preempted by ERISA.  It is immaterial that the participant does not intend or want to assert his claim under ERISA.  "The preemptive force of ERISA is so powerful that it converts 'a state law claim into an action arising under federal law,' even if the plaintiff does not want relief under ERISA." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (citing *Taylor*, 481 U.S. at 64).  Section **502(a)** of ERISA authorizes a claim by a participant of an ERISA plan "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Further, Congress has authorized plan fiduciaries to bring civil actions "to obtain other appropriate equitable relief" to redress violations of the terms of an ERISA plan.  **29 U.S.C. § 1132(a)(3)**.[4]  *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58 (1987).  Where a fiduciary of an ERISA plan filed a complaint in federal court which states a claim for equitable relief, a federal court has exclusive jurisdiction to decide the claim.  *Administrative Committee v. Gauf*, 188 F.3d

---

[4]Section **502(a)(3)** of ERISA provides in part:
"A civil action may be brought ... (3) by a ... fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

**767, 770 (7th Cir. 1999)**.  Thus, plan fiduciaries cannot bring legal actions for damages under this section, instead being limited to "those categories of relief that were typically available in equity." ***Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)**.

In ***Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)**, the Supreme Court addressed the law-equity distinction as it relates to ERISA § 502(a)(3).  The Supreme Court held that § 502(a)(3) did not authorize a suit by an ERISA plan against a beneficiary for reimbursement where the settlement funds from a personal injury suit had already been distributed and where the defendant was not in possession of the funds.  ***Id.* at 208-22**.  The Supreme Court distinguished restitution at law and restitution in equity.  The majority noted that "a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property." ***Id.* at 214**.  But "where the property ... or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor."  ***Id.*** Thus, the Supreme Court found that the relief sought by the plan was legal, rather than equitable, because it essentially sought to impose personal liability for damages upon the defendants, a classic form of legal action.  ***Id.* at 208-12**.  "'[E]quitable relief" in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity....'" ***Id.* at 210 (citing *Mertens*, 508 U.S. at 256)**.

As to Count I, the Court finds that there is no genuine issue of material fact as Defendants' attempt to prevent the Plan from withholding future benefits is completely preempted by ERISA, to the exclusion of any state law.  Count I of the First Amended Complaint was brought to prevent Defendants from proceeding in their effort to force the Plan to pay benefits contrary to the provisions of the Plan document.  The Plan document that Brunkhorst signed on July 15, 2002 has a subrogation clause (Doc. 44, Exhibit B).  The Plan states:

> As a condition of payment of any benefits to or on behalf of a Participant, and to the extent of such benefits paid, the Fund shall be subrogated to all rights of the Member against any individual, entity, organization or association for damages on account of the injury or illness for which the Fund paid such benefits.

(Doc. 44; Exhibit A, p. 74).  Further, the Plan provides:

> In the event that a Member shall recover any amount from a third party, by judgment, settlement or otherwise, for any act or omission causing an injury or illness for which the Fund paid benefits, then:
> a.    The Member shall be obligated to immediately reimburse the Fund for the full amount of such benefit paid, up to the full amount of recovery **undiminished by attorney's fees** or otherwise; and
> b.    The Fund shall have a lien on the gross recovery prior to all other claims or liens including those for attorneys' fees, in the amount necessary to satisfy the Fund's rights of subrogation and reimbursement.

(Doc. 44; Exhibit A, p. 74).  The Plan also provides:

> In the event that a Member shall fail to reimburse the Fund for any of all amounts due under this provision, the Trustees shall be entitled, in their discretion, to suspend further payment of benefits to or for such Member (whether or not related to the same claim), and to apply benefits otherwise payable in satisfaction of the obligations of the member hereunder.

(Doc. 44; Exhibit A, p. 74) (emphasis added).

The claims contained in Count I of the First Amended complaint are properly brought pursuant to both **§§ 502(a)(3)(A)** and **502(a)(3)(B)** of ERISA and completely preempt Defendants' practices that seek to violate these *terms* of the Plan and to violate ERISA; i.e. the last proceeding in state court, under state law, to try to prohibit the Plan from withholding future benefits.  It is clear from the provisions of the Plan document that the Plan document requires Brunkhorst to reimburse the plan for $21,000 of benefits paid.  The terms of the Plan document also permit the Trustees to suspend further payment of benefits to Brunkhorst to offset his remaining reimbursement obligation.  As this Court has previously found and the Court reiterates again that Defendants' attempt to obtain an order under state law that would prohibit the Plan from suspending Brunkhorst's benefits "is a claim by a participant 'to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan' within the scope of **§ 502(a)** of ERISA.  ERISA completely preempts this claim...."  (Doc. 49, p. 4).

Further the Court rejects Defendants' arguments that a permanent injunction would violate the state court's order regarding Defendant Rich's common fund doctrine claim and that the Plan terms do not expressly require participants to pay their own legal fees.  The Plan document creates a lien upon the settlement proceeds and an underlying personal obligation on Brunkhorst to reimburse the Plan according to the Plan documents as stated in the Court's September 26, 2005 Order:

Even though the Illinois State Circuit Court adjudicated the settlement

proceeds in the tort suit, Brunkhorst still remains liable to the Plan for the monies it advanced to him under the provisions of the Plan document, despite his argument to the contrary. ***Burrell v. Southern Truss***, **667 N.E.2d 172, 176 (Ill. App. 1996)(reversed on other grounds, 679 N.E.2d 1230 (Ill. 1997))("The plaintiff remains legally obligated for the balance of any bill that remains after satisfaction of the lien. Nothing in the opinion prevents any lienholder from collecting the balance due from the plaintiff."); *see also* 770 ILCS 23/45 ("Notwithstanding any other provision of law, a lien holder may seek payment of the account of its reasonable charges that remain not paid after the satisfaction of its lien under this Act.")**.

(Doc. 60, p.7).  Moreover, the Illinois Supreme Court held that under Illinois law, a proceeding to adjudicate liens "is unrelated to the benefit plan and does not alter the contractual relationship of the parties thereto." ***Bishop v. Burgard***, **764 N.E. 2d 24, 34 (Ill. 2002)**.  The Illinois "common fund doctrine operates independently of a plan document....  The relationship between [a participant] and the Plan is controlled completely by the terms of the Plan." ***Administrative Committee v. Varco***, **338 F.3d 680, 691 (7th Cir. 2003)**.  The state court order did not extinguish the balance of the debt owed to the Plan.  Action by this Court is not an injunction against the enforcement of that court order, nor is it in derogation of that order.

Here, the state court order adjudicating liens did not obligate the Plan to pay part of Defendant Rich's attorney's fees; it merely allocated part of the settlement fund to pay, in full, Defendant Rich's attorney's fees.  Further, the language of the Plan states that Brunkhorst reimburse benefits "undiminished by attorney's fees."  Mr. Rich and his client, faced with the dilemma of whether to pay

over to the Plan all of the settlement trust fund, leaving nothing for Mr. Brunkhorst to spend and nothing for Mr. Rich's attorney fee, or take the tack of risking action by the Plan to reduce future benefits, chose the latter.  It was a business decision and the Court hopes made with full disclosure by Mr. Rich to his client of the possible consequences.

Based on the facts of this case, the Court finds the Plan is entitled to judgment on Count I of the First Amended Complaint under **§ 502(a)(3)** of ERISA. Accordingly, the Court **GRANTS** Plaintiffs' motion for summary judgment on Count I of the First Amended Complaint.  Pursuant to **§ 502(a)(3)** of ERISA, the Court enjoins Defendants from employing state law to prevent the Plan from withholding future benefits.  ***See* 29 U.S.C. § 1132(a)(3)(A) (Section 502(a)(3(A) of ERISA expressly authorizes a federal court to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan.")**.

As to Counts II and III, the Court finds that there are no genuine issues of material fact and that Plaintiffs are entitled to a declaration of their rights and obligations of the Plan and Brunkhorst with respect to express trusts created under the Plan document.

As alleged in Count II, the terms of the Plan document require that Brunkhorst hold the recovery he received in the tort suit in trust, as trustee, for the benefit of the Plan, to be used to discharge his reimbursement obligation owed to the Plan.  Further, as alleged in Count III, the terms of Plan document require that

Plaintiffs hold the Plan assets in trust, as trustees, for the benefit of Brunkhorst and the other participants, to be used to pay benefits under the terms of the Plan document.  Plaintiffs are asking the Court to find and declare that Brunkhorst has not satisfied his obligation to reimburse the Plan for benefits paid on account of his December 21, 2001 injuries.  Plaintiffs do not seek a judgment imposing personal liability on Brunkhorst to satisfy his reimbursement from "other moneys" outside the Plan; instead Plaintiffs seek only to vindicate their right as Trustees to charge future benefits that become payable to Brunkhorst as a trust beneficiary.

At this point in the litigation, Brunkhorst's obligation to reimburse the Plan for benefits paid remains unsatisfied.  The undisputed facts demonstrate that Plan document expressly provides that the reimbursement due from a participant shall be in the full amount of the third-party recovery, "undiminished by attorney's fees or otherwise."  The Plan document places onto the participant responsibility for all attorney's fees, as well as all other claims against a settlement fund, by requiring that amount of the participant's reimbursement obligation shall not be reduced on account of any such items.  The Plan document creates contractual rights and obligations.  *See Jass*, 88 F.3d at 1489.  Brunkhorst became contractually bound to the terms of the Plan document when he became a participant.  At that time, the settlement fund did not exist.  Thus, the terms of the Plan document do not create the Settlement Trust as a formally formed trust but rather as a promise by Brunkhorst to make a trust in the future.  He received valuable consideration for this promise when the benefits were advanced to him.  The trust takes effect upon the

acquisition of the intended trust property. Under the terms of the Plan, Brunkhorst was required to hold the intended trust property in Settlement Trust.

Further, pursuant to § 403 of ERISA, the assets of the Plan are held in an express trust, the Plan Asset Trust, from which benefits are paid. Under the terms of the Plan, Brunkhorst's reimbursement obligation was $21,000 the amount of his settlement. Brunkhorst only has paid $6,282.90 of his $21,000 reimbursement obligation, leaving indebtedness of $14,717.10 owed to the Plan Asset Trust. Under equitable principles of trust law and under the terms of the Plan document, Brunkhorst's interest in the Plan Asset Trust is subject to a charge for repayment of the balance of his reimbursement obligation. Clearly, the Court takes this action to further the interest of the Plan under ERISA, not in derogation of the state court, where the Court notes no action had yet been undertaken when Judge Perry acted herein.

Plaintiffs are not seeking restitution under Counts II and III; they are seeking declaratory relief pertaining to express trusts which is a type of relief available in equity. *See Alexander v. Hilman,* **296 U.S. 222, 239 (1935) ("All trusts, those implied as well as those expressly created, are within the jurisdiction of courts of equity."); ("A court of equity will always by its decree declare the rights, interest, or estate of the [beneficiary], and will compel the trustee to do all the specific acts required of him by the terms of the trust.") 1** *Pomeroy's Equity Jurisdiction,* **§ 158**.

Thus, the Court declares that Defendant Brunkhorst violated his fiduciary duties as trustee of said settlement trust by causing assets to be disbursed to himself and others rather than being applied to the purposes of the trust; that Brunkhorst remains obligated to reimburse the Plan in the amount of $14,717.10 for benefits advanced on account of his December 30, 2001 injuries; that the Plaintiffs have the right to withhold future benefits from Brunkhorst in accordance with the terms of the Plan to recoup the loss to the fund resulting from Brunkhorst's failure to disburse the settlement funds in accordance with the Settlement Trust (Count II); and that Plaintiffs have a right under the Plan to impose a charge on the beneficial interest of Brunkhorst in said trust fund, by withholding future benefits from Brunkhorst otherwise payable to him as a beneficiary in said trust fund in order to recoup the unpaid balances of advances made to him from said trust fund in the amount of $14,717.10 (Count III).  The Court noted relative to Count I that Mr. Brunkhorst, in conjunction with his counsel, made a decision to pay over to the Plan only a small portion of what was owed, leaving a large balance due.  Perhaps, they felt the gamble was one that would reap large rewards, but their gamble did not pay off.  Now they must answer to that risk and pay the dividend of having made such a risky decision.

As to Brunkhorst's argument that he was unaware of the existence of the trust and, therefore, could not have intended to create it, the Court rejects this argument.  Prior to receiving any benefits for his December 30, 2001 injury, Brunkhorst received and signed an agreement with the "Carpenters' Health and

Welfare *Trust Fund* of St. Louis."  Before the $21,000 was disbursed, Rich, acting as attorney for Brunkhorst, received notice of the reimbursement rights of the "Trust Fund" and its "Trustees."  Thus, Brunkhorst, directly and through his attorney had notice of the existence of the Plan Asset Trust.[5]

Lastly, pursuant to § 502(g) of ERISA, the Court finds that Plaintiffs are entitled to reasonable attorney's fees and costs.

## IV.  <u>Conclusion</u>

Accordingly, the Court **GRANTS** Plaintiffs' motion for summary judgment (Doc. 65).  The Court **ORDERS** the Clerk of the Court to enter summary judgment in favor of Plaintiffs, Terry Nelson, John Mulligan, Patrick J. Sweeney, III, Renee Bell, Thomas Heinsz, John Fischer, Dave Caputa, Kenneth Stricker, James Schmid, Kirk Vereman, Al Bond and Angelo Lancia, as Trustees of the Carpenter's Health and Welfare Trust Fund of St. Louis, and against Defendants Brian Brunkhorst and Thomas C. Rich on Counts I, II and III of the First Amended Complaint.

The Court permanently **ENJOINS** Defendants Brian Brunkhorst, Thomas C. Rich and all those acting for or in concert with them from each and every one of the following acts:

(a) Pursuing any claim against Plaintiffs or the Carpenters' Health and Welfare Trust Fund of St. Louis, or initiating any further proceeding

---

[5]Moreover, "a trust can be treated without notice to or acceptance by the beneficiary" (**Restatement (Second) of Trusts (1956) § 36)**.

concerning benefits payable by said Fund to Defendant Brian Brunkhorst, in an action styled ***Bryan Brunkhorst v. Landmark Tavern***, No. 02 L 38, in the Circuit Court for Randolph County, Illinois, or

    (b) Attempting to enforce any order that may be issued against said Fund by the Circuit Court of Randolph County in said action, or

    © Initiating or pursuing any other proceedings in state court under color of state law concerning benefits payable to Brian Brunkhorst from the Carpenters' Health and Welfare Trust Fund of St. Louis.

    Further, the Court **ORDERS** Brian Brunkhorst to specifically perform his agreement to hold in trust, in accordance with the terms of the Plaintiffs' Plan Document, the settlement fund of $21,000.00 received in an action styled ***Bryan Brunkhorst v. Landmark Tavern***, No. 02 L 38, in the Circuit Court for Randolph County, Illinois.  The Court finds and declares (I) that Defendant Brunkhorst violated his fiduciary duties as trustee of said trust by causing trust assets to be disbursed to himself and others rather than being applied to the purposes of the trust; (ii) that the reimbursement obligation of Defendant Brunkhorst, which said trust was created to secure, remains unsatisfied in the amount of $14,717.10; and (iii) that Plaintiffs have the right to withhold future Plan benefits from Defendant Brunkhorst, as a setoff against the loss resulting from his failure to carry out the terms of said trust.

    Also, the Court **FINDS** that Plaintiffs, as the Trustees of the Carpenters' Health and Welfare Trust Fund of St. Louis, are entitled to impose a charge on the

beneficial interest of Defendant Brunkhorst in said Trust Fund, by withholding future benefits otherwise payable to him from said Trust Fund in order to recoup the unpaid balance of advances made to him from said Trust Fund in the amount of $14,717.10.

Defendant Rich is **ORDERED** to provide his client Defendant Brunkhorst a copy of this order so that he shall be fully informed of the orders of this Court.

Lastly, the Court **ORDERS** Defendants, jointly and severally, to pay to Plaintiffs the costs of this action and a reasonable attorney's fee in the amount to be determined by the Court.  Plaintiffs shall file an application for such fees within 30 days after the entry of the judgment.

**IT IS SO ORDERED.**

Signed this 9th day of June, 2006.

/s/        David   RHerndon
United States District Judge